IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:09-cv-1809-B |
| GEORGE WESLEY HARRIS, and GIANT OPERATING, LLC, | § § § | |
| Defendants, and | § § | |
| STEPHEN CHRISTOPHER PLUNKETT, GIANT PETROLEUM, INC., and DSSC OPERATING, LLC, | § § § § | |
| Relief Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Receiver's Motion for Turnover Relief (doc. 17) as amended by the Receiver (doc. 75). The Court has reviewed the motions, the briefs, and the applicable law and has heard the arguments of counsel. The Court finds that the Receiver's Motion should be **GRANTED.**

The Receiver, Karen Cook, ("Receiver") and American Cancer Society ("ACS") (collectively, "Parties") have stipulated that ACS received $240,000 in payments from Giant Petroleum, Inc., and DSSC Operating, LLC. At issue is whether these payments should be returned to the Receivership Estate.

**The Receivership Order**

The Court finds that the funds at issue are subject to the Receivership Order. (Doc. 8). The Receivership Order expressly gives the Receiver authority to "immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable

to assets owned by the receivership estate." *Id*. at ¶ 4. The Receiver may enforce this Order by "[i]nstitut[ing] such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *Id*. at ¶ 5(c).

ACS contends that the payments at issue are not subject to the Receivership Estate because title was transferred prior to entry of the Receivership Order. This argument is foreclosed by the language of the Order itself, which states that the limitations on the Receiver "shall not be construed to limit the powers of the Receiver in any regard with respect to transactions that may have occurred prior to the date of this Order." *Id*. at ¶ 3.

ACS further contends that the Receivership Order alone is insufficient and the Receiver must establish an independent legal basis to recover. The Court need not decide this issue because it finds that independent legal authority has been established.

**Fraudulent Transfer**

Under Texas law, a payment made with the actual intent to hinder, delay, or defraud any creditor of the debtor is fraudulent. TEX. BUS. & COM. CODE § 24.005(a). "Transfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, insolvent from inception." *Quillian v. Schonsky*, 247 Fed. App'x 583, 586 (5th Cir. 2007) (unpublished); *see also Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) (same). Though a Ponzi scheme was not specifically alleged, the presumption that a transfer was fraudulent applies "whether the organization neatly fits within a judicially constructed definition of Ponzi scheme or was a fraudulent scheme that had some, but not all, attributes of the traditional Ponzi scheme." *In re IFS Financial Corp.*, 417 B.R. 419, 440-41 (Bkrtcy. S.D. Tex. 2009). The Court notes that the

Fifth Circuit specifically identifies the organization's insolvency as the key factor in a Ponzi scheme. Here, the Receiver has testified, and the evidence shows, that 1) investor funds constituted virtually all of Giant's revenue; 2) the funds were commingled with personal funds and used for expenses other than the purposes represented to investors; 3) Giant did not operate a profitable business outside of money it received from new investors; 4) investor funds were used to pay "returns" to some investors; and 5) much of the money received by Giant was used to procure future investments. The Court finds the Receiver has sufficiently shown that Giant was engaged in a Ponzi-like scheme. *See Quillian*, 247 Fed. App'x at 586 (unpublished) (affidavit of receiver sufficient to establish fraudulent scheme).

Because the Court finds that the transfer was made with fraudulent intent, ACS has the burden to establish the defense of good faith and reasonable value. TEX. BUS. & COM. CODE § 24.009(a); *Hahn v. Love*, 2009 WL 793637, No. 01-07-00096-CV (Tex. App – Houston [1st Dist.] Mar. 26, 2009) at *6; *Flores v. Robinson Roofing & Constr. Co.*, 161 S.W.3d 750, 756 (Tex. App. – Ft. Worth 2005). Here, ACS is unable to show that the money it received was "for value."

Whether a fraudulent transfer was made "for value" is determined from the perspective of the creditor or investor. *See SEC v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007); *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000). From the investors' perspective, Giant received nothing of value. To the extent that Giant received goodwill from the promotional materials ACS bought on its behalf, such goodwill only served to give Giant legitimacy and access to more investors. *See Warfield*, 436 F.3d at 560 (noting that benefits which serve to secure new investors into a Ponzi scheme are not value). Similarly, the Court disagrees with ACS's contention that the payments were in the nature of payments on antecedent debts. To the extent that ACS relies on the existence of a

3

contract, it has shown no consideration. ACS's contention is further belied by its tax treatment of the payments, as demonstrated by official gift receipts. [Receiver's Exh. K]. Notably, the receipt states that the "gift amount" was $50,000. *Id*. Furthermore, the receipt states that the benefit provided for tax purposes was $3,600. *Id*. Parties agree that the benefit was in the form of event tickets. [ACS Br. at ¶ 36.] The tickets, which presumably benefitted the perpetrators of the fraud, do not constitute value from the investors' perspective. *See Res. Dev. Int'l*, 487 F.3d at 301 (creditors did not benefit from payments for legal defense of fraudulent transferor).

### Offsets

ACS also argues that they are entitled to equitable offsets for expenses they incurred in connection to Giant's underwriting. TEX. BUS. & COM. CODE § 24.009(c)(1). The Court finds that the equities favor the investors. The Court notes that the money paid by Giant to ACS was used to cover expenses for the Cattle Baron's Ball. These expenses resulted in large returns for ACS. [ACS Br. at ¶ 41.] Therefore, even upon returning the money, ACS will have received a net benefit from having had the use of the money. In contrast, the defrauded investors are simply seeking a return of some portion of their principal payments.

For these reasons, the Court finds that the Receiver's Motion for Turnover Relief should be **GRANTED**.

**SO RECOMMENDED,** September 7, 2010.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).