UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-1809-B |
| GEORGE WESLEY HARRIS, STEPHEN CHRISTOPHER PLUNKETT, WILLIAM CARSON ARNOLD, and GIANT OPERATING, LLC, | § § § § § § | FILE UNDER SEAL |
| Defendants, and | § § | |
| GIANT PETROLEUM, INC., and DSSC OPERATING, LLC, | § § § | |
| **Relief Defendants Solely for the Purposes of Equitable Relief.** | § § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Wick Phillips Gould & Martin, LLP's ("Wick Phillips") Motion for Ruling on Second Interim Fee Application filed October 13, 2011 (doc. 218). For the reasons stated below, Wick Phillips' Motion is **DENIED WITHOUT PREJUDICE**. The Court also **DENIES WITHOUT PREJUDICE** the Receiver's Motion for Approval of Second Interim Fee Application (doc. 205) to the extent it seeks payment of fees and expenses not already approved by the Court in its Order of February 25, 2011.

I.

BACKGROUND

On September 29, 2009, the Court appointed Ms. Karen L. Cook ("the Receiver") as Receiver in this case and directed her to manage the Receivership Estate. Since then, the Receiver, her attorneys, and parties with whom she has contracted have expended hundreds of hours in furtherance of the Receivership. In order to pay expenses and as compensation, the Receiver submitted her Amended Motion for Approval of First Interim Fee Application ("Am. 1st Fee App.") on April 20, 2010. In this Motion, the Receiver sought payment of $285,045.37 for fees and expenses incurred between the date of her appointment on September 29, 2009 and January 31, 2010. Of this amount, the Receiver requested $85,040.00 in fees for her work as Receiver and $116,041.18 in fees and expenses for Wick Phillips' work in support of the Receivership, for a total of $201,081.18.[1] The Court approved payment for the full amount on May 5, 2010, even though the Receivership held only $390,000 in deposits, approximately, at that time. *See* Am. 1st Fee App. 8.

On December 6, 2010, the Receiver filed her Motion for Approval of Second Interim Fee Application ("2d Fee App."). The Second Interim Fee Application sought payment of $376,041.83 for fees and expenses incurred between February 1, 2010 and October 31, 2010. *Id.* at 1. Of this amount, the Receiver sought $167,889.40 in fees for her work and $170,939.45 in fees and expenses for Wick Phillips' work in support of the Receivership.[2] *Id.* at 17, 20. After an *in camera* discussion with the Receiver on February 24, 2011, the Court granted the Receiver's Motion in part on

---

[1] The First Interim Fee Application also sought approval of payment to various other parties, including accountants and consultants.

[2] The Second Interim Fee Application also sought approval of payment of other expenses in the amount of $34,433.56, which the Court approved on February 25, 2011.

February 25, 2011, deferring a determination on the payment of the Receiver's and Wick Phillips' fees. During the *in camera* discussion, the Court expressed its concerns regarding, *inter alia*, a request for fees that exceeded the estimated assets of the Receivership Estate. The Court also gave the Receiver thirty days to submit a plan to the Court setting forth the foreseeable benefit to the investors from the continued operation of the Receivership in order to assist the Court in its determination of the appropriate fees in this case. The Court has since received more detail from the Receiver regarding the actual assets recovered and the expected future revenue from Receivership Estate assets. The most recent information report stated that the Receiver had recovered approximately $697,500 in assets. *In Camera* Status Report July 11, 2011 at 3. The Receiver also estimated that the oil wells, under the new operator and under the anticipated methods of operation, would generate between $385,249 and $643,064 in annual net profit. *Id.* at 2.

On October 13, 2011, Wick Phillips filed its Motion for Ruling on Second Interim Fee Application requesting payment of the $338,828.85 requested but not approved by the Court for work through October 2010, including the Receiver's fees.[3] Wick Phillips Mot. 5. Wick Phillips also stated in this motion that the Receiver had incurred $56,072.00 in fees and Wick Phillips had incurred $52,653.53 in attorney's fees and expenses from November 2010 to July 2011, though neither the Receiver nor Wick Phillips have formally requested payment of these amounts. *Id.* at 4-5. Adding up the amount of actual fees and expenses listed in the First and Second Interim Fee Applications and Wick Phillips' Motion, the Receivership has incurred at least $769,812.73 in fees

---

[3]The Receiver has since left Wick Phillips but was compensated by Wick Phillips for her work as Receiver while at the firm.

and expenses,[4] exceeding the $697,500 recovered thus far. Of this amount, the Court has approved payment of $319,478.93. The Court has yet to rule on the remaining unapproved fees and expenses, including the $338,828.85 requested by Wick Phillips in the instant motion.

## II.

## LEGAL STANDARD

The amount of compensation to be awarded a court-appointed receiver is within the court's discretion. *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (citing *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir.1994); *United States v. Code Prods. Corp.*, 362 F.2d 669, 673 (3d Cir.1966)). The Court may consider all consider all of the factors involved in a particular receivership, including, *inter alia*, "the complexity of problems faced, the benefits to the receivership estate, the quality of the work performed, and the time records presented." *Byers*, 590 F. Supp. 2d at 644 (citing *S.E.C. v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973)); *see also Code Prods. Corp.*, 362 F.2d at 673 ("In allowing fees the considerations are the time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained.") (citation omitted).

---

[4]As detailed above, the amounts requested in the First and Second Interim Fee Applications requested $285,045.37 and $376,041.83, respectively, and Wick Phillips' Motion details additional fees and expenses of $56,072.00 and $52,653.53 for the Receiver's and Wick Phillips' work, resulting in the $769,812.73 figure listed. This amount does not include any fees that may have been incurred by the Receiver since she joined her new law firm. This amount also excludes expenses and costs not detailed in the First and Second Interim Fee Applications and Wick Phillips' Motion, though the Court has approved other payments.

Courts reviewing fee applications for receivers must also ensure that receivers are not over-compensated for their work. "In considering applications for compensation by receivers and their attorneys, the courts have long applied a rule of moderation, recognizing that 'receivers and attorneys engaged in the administration of estates in the courts of the United States . . . should be awarded only moderate compensation.' " *Byers*, 590 F. Supp. 2d at 645 (quoting *In re New York Investors, Inc.*, 79 F.2d 182, 185 (2d Cir. 1935)). This moderate compensation should avoid "the appearance of a windfall." *Byers*, 590 F. Supp. 2d at 645 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974)). Further, courts should ensure that Receivers and their attorneys are not being paid legal fees for non-legal work. *See, e.g.*, *S.E.C. v. Kirkland*, 2008 WL 4144424 (M.D. Fla. Sept. 5, 2008) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)).

## III.

## ANALYSIS

Based on the Receiver's submissions up to this point, it is clear that the Receiver and Wick Phillips have expended hundreds of hours in furtherance of a complex and difficult Receivership. Unfortunately, it is less clear that the Receiver's degree of success merits the payments requested. The Receiver has not presented enough evidence of the actual value generated that is or will be available to compensate aggrieved investors such that the Court can award the requested fees at this time. Instead, the Court is faced with fees and expenses that would exhaust entirely or almost entirely the amount of assets actually recovered.[5] The Receiver has presented projections of future

---

[5]Without expressing an opinion on any particular time entry submitted by the Receiver, the Court notes that at least some of the work performed by the Receiver and her attorneys appears to be administrative, rather than legal work, though the Receiver and her attorneys appear to bill all their time under their normal hourly rates for legal work.

income that may result from the future operation of the Receivership's oil wells, but the Court finds that these projections are insufficient to justify the requested payments at this time.[6] Overall, the Court simply does not have enough evidence of the success of the Receivership. As such, as was the case in February earlier this year, the Court does not have sufficient information to properly assess the Second Interim Fee Application, and the Court **DENIES WITHOUT PREJUDICE** Wick Phillips' Motion. The Court also **DENIES WITHOUT PREJUDICE** the Receiver's Motion for Approval of Second Interim Fee Application to the extent it payment of fees and expenses not previously approved by the Court in its February 25, 2011 Order.

In order to approve payment of fees sought in future fee applications, the Receiver must set forth, in addition to time records, briefing showing how the Receiver's work and her attorneys' work satisfy the factors set forth in applicable case law, including *SEC v. Byers*, 590 F. Supp. 2d at 644.[7] **This briefing shall specifically address the degree of success of the Receiver in terms of recovering and generating assets that may be used to compensate aggrieved investors**. Any future fee application shall also update the Court regarding:

1. The current amount of funds in the Receivership Estate,

2. The amount of Receivership Estate funds the Receiver has spent during the Receivership,

---

[6]The Court expresses no opinion at this time as to whether the projected oil well revenues, if accurate, would constitute sufficient "success" to allow the Court to approve payment of all fees and expenses incurred.

[7]The Court recognizes that the Receiver is no longer employed by Wick Phillips and that this change in status may complicate Wick Phillips' attempts to recover fees in this case. Nevertheless, the Court cannot approve the fee application at this time without further detail regarding the success of the Receivership.

3.  The amount of funds acquired by the Receivership and the amount of funds generated through the operation or sale of Receivership Estate assets,

4.  The amount of expected future funds to be brought into the Receivership through the operation or sale of Receivership Estate assets, and

5.  The expected final amount of funds that will be available for distribution to investors at the close of the Receivership.

## IV.

## CONCLUSION

For the reasons stated above, Wick Phillips' Motion is **DENIED WITHOUT PREJUDICE**. The Court also **DENIES WITHOUT PREJUDICE** the Receiver's Motion for Approval of Second Interim Fee Application to the extent it seeks payment of fees and expenses not already approved by the Court.

SO ORDERED.

DATED October 31, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE