UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE WESLEY HARRIS, STEPHEN CHRISTOPHER PLUNKETT, WILLIAM CARSON ARNOLD, and GIANT OPERATING, LLC,<br><br>Defendants, and<br><br>GIANT PETROLEUM, INC., and DSSC OPERATING, LLC,<br><br>Relief Defendants Solely for the Purposes of Equitable Relief. | § § § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. 3:09-CV-1809-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is the SEC's Motion for Final Judgment of Disgorgement, Prejudgment Interest, and Civil Penalty as to Defendant George Wesley Harris ("Harris") filed November 22, 2011 (doc. 232). In his Response filed December 12, 2011, Harris opposes this motion and contests both the amount of disgorgement and what penalty should be imposed. For the reasons that follow, the Court **ORDERS** Harris to disgorge $2,088,850, pay $333,767 in prejudgment interest, and pay a third-tier civil penalty in the amount of $2,370,000.

I.

BACKGROUND

This case concerns an allegedly fraudulent securities offering, in which Harris and his company, Defendant Giant Operating, LLC ("Giant Operating"), and two co-defendants, Stephen Christopher Plunkett ("Plunkett") and William Carson Arnold ("Arnold") raised at least $16.6 million from at least 150 investors in connection with at least five oil-and-gas securities offerings from at least September 2007 through at least September 17, 2009. Am. Compl. ¶ 1. At the beginning of this case, the Court froze the assets of Harris and Giant Operating and placed them under control of a Court-appointed receiver. Order Sept. 29, 2009. On September 21, 2010, the Court entered a Final Judgment of Permanent Injunction as to Harris, permanently enjoining him from violating certain registration and anti-fraud provisions of the federal securities laws, specifically Sections 5 and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e and 77q(a)] and Sections 10(b) and 15(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78o(b) and 78j(b)] and Rule 10b-5 thereunder, [17 C.F.R. § 240.10b-5]. Harris consented in writing to the entry of the Final Judgment of Permanent Injunction in the form in which it was entered. Unopposed Mot. to Enter Final J. of Permanent Inj. as to Defendant George Wesley Harris filed Sept. 17, 2010, Exs. 1-2.[1]

---

[1] Plunkett consented to a proposed Final Judgment of Permanent Injunction which was entered on November 29, 2010. Unopposed Mot. to Enter Final J. of Permanent Inj. as to Def. Stephen Christopher Plunkett filed Nov. 23, 2010, Exs. 1-2. Plunkett also did not oppose the SEC's Motion for Final Judgment of Disgorgement, Prejudgment Interest, and Civil Penalty as to Defendant Stephen Christopher Plunkett filed November 15, 2011, and the Court granted the motion on November 17, 2011. The November 17, 2011 Final Judgment of Disgorgement ordered Plunkett to disgorge $1,088,383, pay prejudgment interest in the amount of $149,956, and pay a civil penalty in the amount of $1,440,000.

Arnold consented to a proposed Final Judgment of Permanent Injunction, which was entered on July 19, 2010. Unopposed Mot. to Enter Final J. of Permanent Inj. as to Defendant William Carson filed June 22,

The Final Judgment of Permanent Injunction provided that Harris "shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]." Final J. Sept. 21, 2010 at 4. It further provided that "[t]he Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission," and prejudgment interest on any disgorgement ordered "shall be calculated from September 1, 2007, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)." *Id.* The Court also explained that on any motion for disgorgement or civil penalties,

> (a) [Harris] will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) [Harris] may not challenge the validity of the Consent or this Final Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

*Id.* at 4-5.

The SEC now moves for disgorgement, prejudgement interest, and a civil penalty as to Harris, seeking that the Court require Harris to pay $2,088,850 in disgorgement and $333,767 in prejudgment interest. The SEC also requests that the Court impose a civil penalty against Harris for $2,370,000, the alleged gross amount of his pecuniary gain from his misconduct. In response, Harris discusses his cooperation with the SEC and the Receiver, including providing "information relative to assets and activities of [Giant Operating] and various individuals," and "voluntarily turn[ing] over

---

2010, Exs. 1-2.

nearly all of his assets to the receiver." Def.'s Resp. 1-2. Due in part to his cooperation, Harris claims, the SEC and the Receiver were able to bring Plunkett's and Arnold's assets into the receivership estate. *Id.* Harris also disputes the amount that he should be required to pay as disgorgement and what penalty should be assessed against him.

## II.

## ANALYSIS

A.   *Disgorgement*

A court may order a party to disgorge profits flowing from securities law violations in order to prevent the wrongdoer from enriching himself by his wrongs. *See, e.g.*, *SEC v. Huffman*, 996 F.2d 800, 802-03 (5th Cir. 1993). Once the SEC has established that a defendant violated securities laws, a court may order the defendant to disgorge a sum of money equal to all the illegal payments he received. *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985). The SEC bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation, and then the burden shifts to the defendant to show that this figure is not a reasonable approximation. *See, e.g.*, *SEC v. Amerifirst Funding, Inc.*, 2008 WL 1959843, at *2 (N.D. Tex. May 5, 2008) (citation omitted). A court enjoys broad discretion in determining the amount to be disgorged. *See, e.g.*, *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996). Further, "any risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995) (citation omitted).

Based on his consent to the Final Judgment of Permanent Injunction, Harris is now precluded from arguing that he did not violate the federal securities laws as alleged in the Amended Complaint.

Also, based on the Final Judgment of Permanent Injunction, the Court accepts the allegations of the Amended Complaint as true. Further, Harris does not now dispute, at least for the purposes of the SEC's motion for disgorgement, that he violated federal securities laws. Based on the evidence provided by the SEC, the Court's Final Judgment of Permanent Injunction as to Defendant Harris, and the Amended Complaint, the Court finds that Harris violated federal securities laws and therefore should disgorge his ill-gotten gains.

Having found that Harris should disgorge his ill-gotten gains, the Court now examines the parties' arguments and evidence regarding the appropriate amount of disgorgement. The Amended Complaint alleges that Harris and his company DSSC Operating, LLC ("DSSC") received approximately $2.37 million of illegal proceeds. Am. Compl. ¶ 27; *see also* Mot. Reply 2 (citing Mot. for Orders Freezing Assets filed Feb. 16, 2010 at App. 54-58 (Decl. of William Rex Rector setting forth distribution of assets from Giant Operating and Giant Petroleum, Inc.)). The SEC also explains that Harris has returned $281,151 to the Receiver, resulting in the $2,088,850 disgorgement amount requested by the SEC. Mot. 5 (citing Mot. Ex. A (Aff. Karen Cook)). The Court finds that this calculation is a reasonable approximation of Harris' ill-gotten gains.

Harris does not dispute the SEC's calculation that he received $2.37 million and returned $281,151 to the Receiver. However, Harris argues that the SEC overstated his gains by failing to subtract from the proposed disgorgement amount funds that went to Plunkett, Arnold, DSSC, and DSSC employees. The entirety of Harris' arguments and evidence in support of his request for a lower disgorgement amount is as follows:

> As to the disgorgement amount, the SEC argues that "Harris took $2.37 million for himself." This figure is based on the SEC's review of Harris' two bank accounts located at Comerica Bank and Chase Bank styled *DSSC Operating LLC*. Indeed,

> Harris already agreed for purposes of the instant matter to not contest the allegations in the complaint that he essentially received approximately $2.37 million, that passed through this bank account. Rather, Harris would show that a portion of the money that passed through his account actually went to other parties, and not Harris. Under such circumstances, these amounts should be excluded from the disgorgement amount since these amounts were not part of his "unjust enrichment."
> Specifically, Harris calculates that, from this amount of $2.37 million, defendant Plunkett received approximately $1,127,894.00 and defendant Arnold received approximately $426,789.00 The fact that Plunkett and Arnold received a significant portion of the proceeds of the company is consistent with the findings of the receiver.
> In addition, other employees were paid from these accounts in the amount of $47,800.00. Finally, Harris moved $150,000.00 back into the corporation. These amounts would not constitute "profits" to Harris.
> These amounts total $1,752,483.00. Subtracting these amounts from $2,370,000.00 would result in a disgorgement amount of $617,517.00.00. This amount is a more accurate and appropriate figure of disgorgement. Harris, therefore, requests that the Court impose a disgorgement amount not to exceed $617,517.00.

Def.'s Resp. 2-3 (citations omitted).

The Court finds that Harris has not met his burden to show that the SEC's proposed disgorgement is not a reasonable approximation of his gains. Faced with the SEC's motion for final judgment of disgorgement, Harris provides only argument that most of the funds he received went to other parties, without any evidence in support. Mere argument is insufficient to meet Harris' burden in light of the SEC's competent evidence. Further, the SEC's calculations, as reflected in the Rector Declaration, expressly account for substantial funds from Harris or DSSC that were paid to Arnold and Arnett Energy Capital, LLC ("Arnett Energy"), a company owned and controlled by Plunkett. *See* Mot. for Orders Freezing Assets filed Feb. 16, 2010 at App. 54-58. These funds received by Harris or DSSC and paid to Arnold and Arnett Energy were not included in the $2.37 million that the Amended Complaint alleges Harris received. Thus, the only evidence submitted to

the Court shows that the SEC's requested disgorgement amount as to Harris should not be reduced on account of funds paid to other parties.

Given that the SEC has shown that its proposed disgorgement was a reasonable approximation of his gains, Harris has failed to show that it was not a reasonable approximation, and the general rule that any uncertainty as to the disgorgement amount should be resolved against the wrongdoer, *Patel*, 61 F.3d at 140, the Court hereby **ORDERS** Harris to disgorge $2,088,850.[2]

B.   *Prejudgment Interest*

The SEC also requests prejudgment interest on Harris' disgorgement. The Court may award prejudgment interest on disgorgement amounts, in its discretion, in order to prevent parties from benefitting from what is, in essence, an interest-free loan resulting from illegal activity. *See, e.g.*, *SEC v. Jakubowski*, 1997 WL 598108, at *2 (N.D. Ill. Sept. 19, 1997) (citation omitted). In federal securities cases, courts generally calculate prejudgment interest by applying the underpayment rate published by the Internal Revenue Service ("IRS"). *See, e.g.*, *SEC v. Koenig*, 532 F. Supp. 2d 987, 995 (N.D. Ill. 2007). Using the IRS's statutory interest rates on the disgorgement amount above, the SEC calculated Harris' prejudgment interest at $333,767 for the period ending August 31, 2010. Mot. Ex. B. Harris does not set forth any particular objections to the SEC's calculations or the SEC's request

---

[2]Further, even if Harris has produced evidence that a substantial portion of the funds he received went to his co-defendants, employees, or DSSC, he provides no specific authority that shows that the SEC may not seek disgorgement of these funds. Indeed, the relevant case law shows that violators of securities laws may be required to disgorge illegal profits even where the profits were eventually lost, paid to co-defendants, or paid to their employees or businesses. *See, e.g.*, *SEC v. Shapiro*, 494 F.2d 1301, 1309 (2d Cir. 1973); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 16 (D.D.C. 1998); *SEC v. Benson*, 657 F. Supp. 1122, 1134 (S.D.N.Y. 1987).

for prejudgment interest generally.[3] The Court finds, in its discretion, that Harris should pay the SEC's requested prejudgment interest amount. Accordingly, the Court hereby **ORDERS** Harris to pay $333,767 in prejudgment interest.

C.   *Civil Penalty*

The SEC requests that the Court impose a third-tier civil penalty on Harris, given that he violated securities law through his fraudulent scheme, which directly caused losses of $16.6 million and otherwise created a significant risk of substantial loss to investors. Specifically, the SEC requests that the Court order Harris to pay a third-tier civil penalty not to exceed $2,370,000, his pecuniary gain as a result of the violation. The SEC does not dispute Harris' significant cooperation with the SEC or his responsiveness to the Receiver but notes that his cooperation occurred after the SEC discovered Harris' scheme and after investors had already invested $16.6 million.

Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] authorize the Court to impose a third-tier civil money penalty if the defendant's violation (1) "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Under Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act, third-tier civil penalties for a natural person shall not exceed the greater of $130,000 (per the inflation adjustment specified by 17 C.F.R. § 201.1003) or the gross amount of pecuniary gain to such defendant as a result of the violation. Monetary penalties are designed to serve as deterrents against securities law violations, in contrast with disgorgement, which

---

[3]The Court notes that ordering Harris' requested disgorgement amount would necessarily lead to a significantly lower amount of prejudgment interest.

primarily aims to remove a defendant's profit from illegal transactions and which "merely places the offender in the same position he would have been in had he not committed the offense." *SEC v. Lipson*, 129 F. Supp. 2d 1148, 1159 (N.D. Ill. 2001).

The Court finds that the SEC's evidence clearly shows that Harris violated securities laws through a fraudulent scheme, and this scheme directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to investors. The Amended Complaint, which this Court deems as true for the purposes of this motion, alleges that Harris participated in a scheme in which the Defendants made false and misleading statements regarding investment returns, acted to prevent potential investors from discovering Plunkett's indictment and felony conviction, including engaging in a sham transaction, and misapplied and misappropriated offering proceeds. Accordingly, the Court is authorized by the applicable statute to impose a third-tier civil penalty. However, the Court must determine whether any other relevant factors weigh against imposition of a third-tier penalty in this case or weigh in favor of reduction of the SEC's requested amount.

Harris argues that while he and his co-defendants may have raised more than $16.6 million, the actual loss to the investors is lower, given his estimate that the value of the oil-well interests they received is approximately $13 million, "based on known production of oil wells drilled to the same depth in the same field and region of New Mexico." Def.'s Resp. 4. Harris also cites his significant cooperation with the SEC and the Receiver in this case, as well as his inability to pay any disgorgement or penalty, as relevant factors in setting the penalty.

The Court finds Harris' arguments unavailing. Once again, Harris provides no evidentiary support showing that the SEC's requested penalty amount is inappropriate. Indeed, the information the Court has received from the Receiver up to this point suggests that the value of the oil well

interests within the Receivership is well below the $13 million figure suggested by Harris. The Court recognizes that, based on both Harris' and the SEC's statements, Harris has cooperated with the SEC and the Receiver and provided significant information which has aided their efforts to collect assets and litigate this case. However, such cooperation does not change the fact that Harris participated in a fraudulent scheme and misled investors, resulting in the substantial loss or risk of substantial loss of investor funds. Further, inability to pay must be established by a preponderance of the evidence, rather than the plain statement of a defendant, as we have here. *SEC v. Huffman*, 996 F.2d at 803. Even if Harris had proven his inability to pay, this inability is at most one factor to be considered in imposing a penalty, and the Court may impose a civil penalty even assuming that he is unable to pay. *SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008). Given Harris' fraudulent scheme, the substantial loss or risk of loss to investors, and the need to deter Harris and others from committing securities law violations, the Court **ORDERS** Harris to pay a third-tier civil penalty in the amount of $2,370,000, his pecuniary gain as a result of the violation.

## III.
## CONCLUSION

For the reasons stated above, the Court **GRANTS** the SEC's Motion for Final Judgment of Disgorgement, Prejudgment Interest, and Civil Penalty as to Defendant George Wesley Harris (doc. 232). Harris is hereby **ORDERED** to disgorge $2,088,850, pay $333,767 in prejudgment interest, and pay a third-tier civil penalty in the amount of $2,370,000. The Court will issue a Final Judgment of Disgorgement, Prejudgment Interest, and Civil Penalty as to Defendant Harris in a separate order.

SO ORDERED.

DATED: March 7, 2012.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE